UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| PETER MAREK,<br>    Plaintiff,<br><br>v.<br><br>STATE OF RHODE ISLAND, et al.,<br>    Defendants. | C.A. No.: 11-033-M |

## MEMORANDUM AND ORDER

JOHN J. MCCONNELL, JR., United States District Judge.

Before the Court are Defendants' motions to dismiss filed in response to this case where the Plaintiff, Peter Marek, alleged a variety of constitutional and other violations stemming from the ultimately unsuccessful pursuit of a residential development adjacent to his property in Hopkinton, Rhode Island.[1] For the reasons set forth below, all four motions to dismiss are GRANTED.

I.     **FACTUAL BACKGROUND**

Mr. Marek owns a parcel of land at 2 Grassy Pond Road in Hopkinton, Rhode Island. (First Am. Compl., ECF No. 21-1.) Adjoining Mr. Marek's land is a 192-acre parcel of land,

---

[1] The motions to dismiss were filed by the following Defendants: (1) the State of Rhode Island, the Rhode Island Department of Environmental Management (DEM), Michael Sullivan, and Charles Horbert (collectively, State Defendants) (ECF No. 15); (2) Town of Hopkinton (Town), Town of Hopkinton Planning Board (Planning Board), Al DiOrio, Town of Hopkinton Town Council, and Thomas Buck (ECF No. 14); (3) Hopkinton Associates, LLC, John R. Assalone, Stephen Padula, and Carmine Oliveira (ECF No. 13); and (4) Commonwealth Engineers and Consults, Inc. (Commonwealth). (ECF No. 12.) When filed, these motions to dismiss were directed at the original complaint. Subsequent to their filing, Mr. Marek moved for leave to file an Amended Complaint. (ECF No. 21.) At the hearing on the motions to dismiss, the Court granted Mr. Marek's motion for leave to amend, informed the parties that it would treat the pending motions to dismiss as directed at the First Amended Complaint, and further permitted the parties to file supplemental briefing.

where, in 1999, Defendant Hopkinton Associates, LLC sought to develop a residential subdivision called "Kenney Hill Farm Estates." *Id.* ¶ 15. The process through which the Kenney Hill Farm Estates development was pursued and ultimately abandoned lies at the center of this dispute. *Id.* Mr. Marek finds fault with several aspects of the unsuccessful process, alleging violations of his constitutional rights under the First, Fourth, Fifth, and Fourteenth Amendments to the United States Constitution,[2] as well as state law claims, including "fraud," "misrepresentation," "malfeasance," "misfeasance," "intentional misrepresentation," "conflict of interest," and "violation of the public trust." *Id.* ¶¶ 13, 18, 30, 40. In addition, Mr. Marek alleges that Defendants are liable under 42 U.S.C. § 1983 for violations of his constitutional rights. *See, e.g., id.* ¶¶ 15, 17, 41.

According to the major land development/master plan application submitted to Defendant Planning Board, Kenny Hill Farm Estates was to have seventy-six residential homes. *See id.* ¶ 15. Kenny Hill Farm Estates was to be bordered in part by Grassy Pond Road, which would require some re-construction. *Id.* As the land surrounding Grassy Pond Road was protected under the Freshwater Wetlands Act, the proposed re-construction of that road would require a Permit to Alter a Freshwater Water Course from Defendant DEM. *Id.* ¶ 19. Defendants Town and Hopkinton Associates, LLC jointly applied for a permit from DEM to alter freshwater wetlands. *Id.* ¶ 23. DEM, through its Permitting Supervisor Defendant Charles Horbert, granted that application as permit number 05-0536. *Id.* Mr. Marek alleges that because Grassy Pond Road traveled partially over his property, the permit should have been obtained with his

---

[2] The First, Fourth, and Fifth Amendments are applicable to the states through the Fourteenth Amendment. *See Martinez-Rivera v. Sanchez Ramos*, 498 F.3d 3, 7 n.4 (1st Cir. 2007) (citation omitted); *Torremeo v. Town of Fremont*, 438 F.3d 113, 114 n.1 (1st Cir. 2006) (citation omitted); *Bonas v. Town of North Smithfield*, 265 F.3d 69, 71 n.1 (1st Cir. 2001) (citation omitted).

permission, which it was not, despite his name being listed on subsequent applications for extensions of time. *Id.* ¶ 22-23.

Mr. Marek challenged the issuance of the permit based on several defects in the application, including the use of maps drafted by Defendant Hopkinton Associates, LCC that were "fraudulent and intentionally misleading," and the fact that Mr. Marek should have been listed as a co-applicant, or, alternatively, that Defendant Town should have attested that it would begin condemnation proceedings. *Id.* ¶ 18, 25. Mr. Marek also alleges that the DEM, through Mr. Horbert, had "no rational basis" for granting a permit that failed to meet "DEM Wetlands Rules and Regulations" and had "obvious deficiencies." *Id.* ¶¶ 48-50. DEM dismissed Mr. Marek's appeal of the permitting decision, which prompted him to file an appeal in the Rhode Island Superior Court. *Id.* ¶¶ 26-27. Mr. Marek dismissed his appeal as moot when Hopkinton Associates, LLC sold the 192-acre parcel to Aubleen Farms, LLC and the permit expired. *Id.* ¶¶ 28-29.

Notwithstanding the expiration of the permit and the voluntary dismissal of the administrative appeal, Mr. Marek filed this case based on a violation of his constitutional rights. In Count I, Mr. Marek alleges that the approximately five extensions of time to complete the requirements for the development that Defendant Planning Board improperly granted to Hopkinton Associates, LLC clouded his title to his economic detriment. *Id.* ¶¶ 10-11, 15-16. He further alleges that these extensions violated Defendant Town's Land Development Regulations because an extension fee was not assessed and the applicant was not required to show "good cause." *Id.* ¶ 16. Mr. Marek alleges that the failure to comply with the Land Development Regulations resulted in a "taking" of his property without just compensation in the form of an unmarketable title. *Id.* ¶ 17. In Count II, Mr. Marek alleges that DEM failed to get his

permission before granting the permit, which he was forced to contest because the permit application was based on misrepresentations and fraudulent surveys, affecting a taking of his property. *Id.* ¶¶ 33-34. In Count III, Mr. Marek alleges that the failure to follow the rules throughout the permit process was the result of the Town's custom or policy to break its own rules and regulations. *Id.* ¶¶ 43-44. Further, Defendant Planning Board chairman Mr. DiOrio had a conflict of interest based on his previous work with Hopkinton Associates, LLC and its controlling members, and therefore should have recused himself from the consideration of the development. *Id.* ¶¶ 37, 42. Count IV is essentially a reiteration of Mr. Marek's allegations in his first three counts, specifically alleging that the Defendants' acts constituted intimidation and an abuse of process that did or threatened to infringe on his ability to exercise his speech and other constitutional rights.

## II. STANDARD OF REVIEW

According to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a cause of action may be dismissed for "failure to state a claim upon which relief can be granted." In considering a motion under Rule 12, the Court will "accept well-pleaded facts as true and draw all reasonable inferences from those facts in favor of the plaintiff." *Figueroa v. Rivera*, 147 F.3d 77, 80 (1st Cir. 1998). The complaint must "'give the defendant[s] fair notice of what the ... claim is and the grounds upon which it rests,' and allege 'a plausible entitlement to relief.'" *Decotiis v. Whittemore*, 635 F.3d 22, 29 (1st Cir. 2011) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 559 (2007)).

Additionally, the Court must dismiss an action if it lacks subject-matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). "Failure to exhaust administrative remedies and ripeness challenges may be appropriate in a motion to dismiss for lack of subject matter jurisdiction." *United States*

v. *Lahey Clinic Hosp., Inc.*, 399 F.3d 1, 8 n.6 (1st Cir. 2005) (citing *Bonilla v. Muebles J.J. Alvarez, Inc.*, 194 F.3d 275 (1st Cir. 1999); *Deniz v. Municipality of Guaynabo*, 285 F.3d 142 (1st Cir. 2002)). Moreover, "[a] court is duty-bound to notice, and act upon, defects in its subject matter jurisdiction sua sponte." *Spooner v. EEN, Inc.*, 644 F.3d 62, 67 (1st Cir. 2011) (citing *McCulloch v. Vélez*, 364 F.3d 1, 5 (1st Cir. 2004)).

## III. LEGAL ANALYSIS

Plaintiff claims violations of the First, Fourth, Fifth and Fourteenth Amendments to the United States Constitution as well as state law claims. The Court will address these claims in turn.

### A. Fifth Amendment Claims in Counts I, II, III, and IV

Mr. Marek alleges that the Defendants' acts "took" his property by clouding his title because the Planning Board and its chairman granted extensions of time to Hopkinton Associates, LLC without good cause and requisite penalties, and the Town and Hopkinton Associates, LLC applied for, and the State Defendants issued, a permit premised on fraudulent maps drawn by Commonwealth. Each Defendant disputes these allegations and argues that Plaintiff's Fifth Amendment takings claims fail because he failed to exhaust his state court remedies before filing this lawsuit.

The Court finds that the record supports Defendants' arguments. The Supreme Court has explained that "[t]he Fifth Amendment does not proscribe the taking of property; it proscribes taking without just compensation." *Williamson Cnty. Reg'l Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 194 (1985). "Nor does the Fifth Amendment require that just compensation be paid in advance of, or contemporaneously with, the taking.'" *Deniz v. Municipality of Guaynabo*, 285 F.3d 142, 146 (1st Cir. 2002) (quoting *Williamson Cnty.*, 473 U.S. at 194). Thus,

"if a [s]tate provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the Just Compensation Clause until it has used the procedure and been denied just compensation." *Downing/Salt Pond Partners, L.P. v. Rhode Island*, 643 F.3d 16, 20 (1st Cir. 2011) (quoting *Williamson Cnty.*, 473 U.S. at 195). The Supreme Court has recognized that this may result in the claim never being brought in federal court. *Id.* at 21 (citing *San Remo Hotel, L.P. v. City & Cnty. of San Francisco*, 545 U.S. 323, 342 (2005). Moreover, "'[s]tate courts are fully competent to adjudicate constitutional challenges to local land-use decisions,'" as those courts have more experience with "'the complex factual, technical, and legal questions' [those disputes] raise." *Id.* at n.5 (quoting *San Remo Hotel*, 545 U.S. at 347).

Here, Mr. Marek has not met the state litigation requirement of *Williamson County*. Assuming that Defendants' conduct affected a taking of Mr. Marek's property and recognizing that Mr. Marek filed an administrative appeal of the DEM permit and an appeal in Rhode Island Superior Court that he ultimately dismissed as moot when the permit expired, Mr. Marek never brought an action in state court seeking compensation for the alleged taking. Until that litigation determines what compensation, if any, Mr. Marek should receive for the alleged taking, the Court cannot determine whether there has been a taking *without* just compensation. *See id.* at 20.

Moreover, the fact that Mr. Marek does not allege that his property was physically taken does not change the inquiry the Court must make under our prevailing case law. The First Circuit explained in *Downing/Salt Pond Partners* that "[t]he specific mechanism of the alleged taking had no bearing on [its] consideration of the *Williamson County* ripeness requirements in *Pascoag*." 643 F.3d at 27 (citing *Pascoag Reservoir & Dam, LLC v. Rhode Island*, 337 F.3d 87, 90 (1st Cir. 2003)). Additionally, Mr. Marek cannot assert that he does not have a state court remedy because "'Rhode Island state courts have long allowed recovery through suits for inverse

condemnation.'" *Id.* at 22 (quoting *Pascoag Reservoir & Dam, LLC*, 337 F.3d at 93). The manner that Mr. Marek asserts that his property has been taken does not merit a divergence from the standard, even if Mr. Marek were to argue that inverse condemnation may not apply to his claims. *See Deniz v. Municipality of Guaynabo*, 285 F.3d 142, 147 (1st Cir. 2002) (rejecting the property owner's argument that he had no state court remedy because Puerto Rico law did not allow for inverse condemnation actions for a de facto taking and finding that "the most that c[ould] be said is that it remain[ed] unclear whether the inverse condemnation remedy applie[d].").

The Court finds that Mr. Marek has not shown that he is excused from the state litigation requirement. Thus, Mr. Marek's failure to meet the *Williamson County* ripeness requirement "'looks like a trapdoor straight to state court.'" *Downing/Salt Pond Partners*, 643 F.3d at 24 (quoting *Downing/Salt Pond Partners, L.P. v. Rhode Island*, 698 F. Supp. 2d 278, 282 (D.R.I. 2010)). As such, Mr. Marek's takings claims in Counts I, II, III, and IV are dismissed.

## B. Fifth and Fourteenth Amendment Claims in Counts I, II, III, IV

Other than his takings claims, Mr. Marek's allegations sound primarily in the Fifth and Fourteenth Amendment, arguing that Defendants' conduct vis-à-vis the process of pursing the Kenney Hill Farm Estates subdivision violated his right to due process. He relies on the same facts to allege due process violations that he alleges constitute a takings violation. Again, Defendants dispute these allegations as lacking factual and legal bases.

It is important to note that a litigant "cannot, merely by recasting its takings claim 'in the raiment of a due process violation,' evade the *Williamson County* ripeness requirements." *Downing/Salt Pond Partners, L.P.*, 643 F.3d at 28 (quoting *Deniz*, 285 F.3d at 149). It does appear from Mr. Marek's complaint that the crux of his factual allegations and damages claims

7

relate to the takings claim, with due process and other constitutional violations thrown in for good measure. Therefore, in light of the Court's finding as to Mr. Marek's takings claim in Counts I, II, III, and IV, his failure to exhaust his state court remedies appears fatal to his due process claims. Even if the Court were to find, however, that Mr. Marek's due process claims stood independent of and were not dressed up versions of his takings claims, the case law supports the conclusion that Mr. Marek's complaint fails to state a claim against these Defendants.

"It has long been held that, despite their name, the due process clauses of the Fifth and Fourteenth Amendments 'guarantee[ ] more than fair process.' The substantive component of due process 'provides heightened protection against government interference with certain fundamental rights and liberty interests.'" *Cook v. Gates*, 528 F.3d 42, 49 (1st Cir. 2008) (citations omitted). The First Circuit, however, has explained the limits on substantive due process in the context of land-use disputes. *Torromeo v. Town of Freemont*, 438 F.3d 113, 118 (1st Cir. 2006). Even violations of state law or administrative procedure "'do not ordinarily rise to the level of a constitutional deprivation.'" *Id.* (quoting *SFW Arecibo, LTD. v. Rodriguez*, 415 F.3d 135, 141 (1st Cir. 2005)). Only when there is an "'abuse of government power that shocks the conscience,'" the government's power is "'used for purposes of oppression,'" or the government's action is "'legally irrational,'" is substantive due process implicated. *Id.* Moreover, "even an arbitrary denial of a permit in violation of state law – even in bad faith – does not rise above the constitutional threshold for . . . substantive due process claims." *Baker v. Coxe*, 230 F.3d 470, 474 (1st Cir. 2000) (citation omitted).

Here, assuming that the various Defendants were acting under the color of law as required by 42 U.S.C. § 1983,[3] the Court finds that the conduct at issue simply does not rise to the level of behavior that shocks the conscience. Conduct such as improperly granting extensions of time to Hopkinton Associates, LLC and applying for a permit based on allegedly fraudulent maps is not the "truly horrendous" conduct that the Court believes the First Circuit contemplated in considering abuses of government power. *See Torromeo*, 438 F.3d at 118; *see also Baker*, 230 F.3d at 471, 474, 477 (court affirmed the dismissal of a complaint alleging a due process violation by government officials because the conduct alleged did not rise to the level of "the extreme 'malicious orchestrated campaign' needed to surmount the constitutional threshold."). Taking the facts as pled in Plaintiff's complaint, the conduct here fails to meet the high threshold required to allege a Fifth or Fourteenth Amendment due process violation.

### C. First Amendment Claims in Counts II, III, and IV

Mr. Marek invokes the First Amendment in Counts II, III, and IV, alleging that the Defendants suppressed his ability to petition the government because they essentially shut him out of the permit and development process and that, through the pattern and practice of official intimidation, Defendants threatened Mr. Marek's First Amendment rights. Again, Defendants dispute these allegations, factually and legally.

The Court finds that Mr. Marek's complaint fails to state a claim for a First Amendment violation. "The right to petition the courts for redress implicates the First Amendment right of free speech and right to petition the government." *The Real Estate Bar Ass'n For Mass., Inc. v.*

---

[3] "This statute 'supplies a private right of action against a person who, under color of state law, deprives another of rights secured by the Constitution or by federal law.'" *Deniz*, 285 F.3d at 145-46 (quoting *Evans v. Avery*, 100 F.3d 1033, 1036 (1st Cir. 1996)). Because the Court finds that the conduct at issue does not rise to the level of shocking the conscience, there is no need to determine whether Defendants were acting "under color of law." *See id.*

*Nat'l Real Estate Info. Servs*, 608 F.3d 110, 124 (1st Cir 2010) (citing *United Mine Workers of Am. v. Ill. State Bar Ass'n*, 389 U.S. 217, 222 (1967); *NAACP v. Button*, 371 U.S. 415, 429 (1963); *Powell v. Alexander*, 391 F.3d 1, 16-17 (1st Cir. 2004).) Plaintiff's complaint is bereft of any allegations demonstrating that any of the Defendants engaged in any conduct that prevented him from exercising his right to petition the government. In fact, it is clear from his complaint that Mr. Marek has exercised his rights by appealing DEM's permit, appealing the denial of that appeal to the Rhode Island Superior Court, and filing this lawsuit. His allegations that Defendants intimidated him are belied by the events leading to and the travel of this litigation. Therefore, the Court dismisses Plaintiff's First Amendment claims in Counts II, III, and IV.

### D. Fourth Amendment Claims in Count II, III, and IV

Mr. Marek invokes the Fourth Amendment in Counts II, III, and IV, but it is not altogether clear from the allegations in those counts what conduct he believes invokes that specific constitutional right. Plaintiff's single allegation that Defendants "[d]isregard[ed] Plaintiff's rights and property interests and liberties" appears to go to a Fourth Amendment violation. (ECF No. 21 at ¶ 55.) The Court, however, will assume that Mr. Marek believes that a seizure of property occurred because the development plan would alter his property.

Mr. Marek's complaint is fatally deficient in this regard. "The purpose of the Fourth Amendment is to prevent unreasonable governmental intrusions into the privacy of one's person, house, papers, or effects. The wrong condemned is the unjustified governmental invasion of these areas of an individual's life." *U.S. v. Calandra*, 414 U.S. 338, 354 (1974). Other than the singular and vague reference to his property interests, Plaintiff has failed to allege that the Defendants, or any of them, have intruded on his personal privacy, his home, or property. It is clear from the record and from the fact that Plaintiff dismissed his state court appeal as moot that

the development deal did not materialize. As such, no specific allegation can be made that Defendants invaded his "person, house, papers or effects." *Id.* Because his complaint fails to allege a plausible Fourth Amendment violation, Mr. Marek's claims in Counts II, III, and IV are dismissed.

### E. State Law Claims

Without Mr. Marek's constitutional claims, the only remaining claims are those arising under state law. Although "the termination of the foundational federal claim does not divest the district court of [its] power to exercise supplemental jurisdiction," that power is exercised at the discretion of the court. *Penobscot Indian Nation v. Key Bank of Maine*, 112 F.3d 538, 564 (1st Cir. 1997) (quoting *Roche v. John Hancock Mut. Life Ins. Co.*, 81 F.3d 249, 256-57 (1st Cir. 1996)). The Court "may decline to exercise supplemental jurisdiction" if it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Because the central issue of this case must be litigated in the first instance in state court, the Court declines to exercise its discretion to retain supplemental jurisdiction. *Cf. Ciampi v. Zuczek*, 598 F. Supp. 2d 257, 265 n.8 (D.R.I. 2009) (retaining supplemental jurisdiction after the dismissal of due process claims in a land-use context because discovery had been completed and the court was familiar with the facts). Thus, Mr. Marek's state law claims are dismissed.

## IV. CONCLUSION

Based on the foregoing, Defendants' motions to dismiss are GRANTED.

SO ORDERED:

/s/ John J. McConnell, Jr.

John J. McConnell, Jr.
United States District Judge

March 2, 2012